# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, ) ) ) Plaintiff, ) ) v. ) ) NATIONAL UNION FIRE INSURANCE ) COMPANY OF PITTSBURGH, PA; ) GEOFFREY N. FIEGER; LORI SLIDER, in ) her own right and as parent and natural ) guardian of RYAN E. TAYLOR, a minor; ) RYAN E. TAYLOR, individually; and ) BRADLEY BASSI, ) ) Defendants. ) | 02: 09-cv-0401 |

## MEMORANDUM OPINION AND ORDER

April 14, 2009

This is an action in the nature of interpleader pursuant to Title 28, United States Code, section 1335, filed by Insurance Company of the State of Pennsylvania ("ICSOP") to resolve alleged "competing" claims against the proceeds of a *Supersedeas* Bond in the amount of $19,300,000.00 (the "Bond"), which secures payment of a judgment entered in favor of Lori Slider, in her own right and natural guardian of Ryan E. Taylor, a minor, in the Court of Common Pleas of Washington County.

On April 6, 2009, ICSOP filed a three-count Complaint in this Court. Count One of the Complaint is an interpleader action against all defendants; Counts Two and Three seek a declaratory judgment against Geoffrey N. Fieger; Lori Slider, in her own right and as parent and natural guardian of Ryan E. Taylor, a minor; Ryan E. Taylor, individually; and Bradley Bassi (collectively referred to as the "*Slider* Defendants").

On April 7, 2009, ICSOP filed an Emergency Motion, with brief in support, to Deposit Funds and/or a Bond in the Registry of the Court, Motion for Preliminary Injunction (Interpleader Injunction); and Motion for Temporary Restraining Order (Document Nos. 3 and 4). Attached to the Motion were twenty-one exhibits, including various opinions issued by the Court of Common Pleas of Washington County; the Superior Court of Pennsylvania, and the Order of March 31, 2009 issued per curiam by the Supreme Court of Pennsylvania in which National Union's Petition for Allowance of Appeal was denied.

On April 9, 2009, Defendants Lori Slider, in her own right and as parent and natural guardian of Ryan E. Taylor, a minor; Ryan E. Taylor, individually; and Geoffrey Fieger filed a Motion to Dismiss Complaint for Interpleader pursuant to Federal Rules of Civil Procedure 12(b)(1), lack of subject matter jurisdiction. Defendants also argue that the instant action is barred by the well-established principles of the *Rooker-Feldman* doctrine and the *Younger* abstention doctrine. Attached to the Motion to Dismiss were five (5) exhibits, which included, *inter alia,* an Assignment of Rights executed on November 8, 2001 by National Union Fire Insurance Company of Pittsburgh ("National Union") and Lori Slider, in her own right and as parent and natural guardian of Ryan Taylor, a minor.

On April 14, 2009, Plaintiff filed the following two documents:

• Plaintiff's Response to Motion to Dismiss and in Further Support of Plaintiff's Motion for Injunctive Relief (Document No. 6); and

• Plaintiff's Memorandum In Response To the Motion to Dismiss And in Further Support of Plaintiff's Motion for Injunctive Relief (Document No. 7).

The Court has also been provided with a copies of the following:

• Correspondence of April 9, 2009 from Michelle K. Carson, Esquire, attorney for ICSOP to Geoffrey N. Fieger, Esquire; and

• An Application for Attachment and Release of Supersedeas Appeal Bond and for Judgment Against ICSOP, which counsel for the *Slider* Defendants represents will be presented "to the Honorable Debbie O'Dell Seneca . . . on Wednesday, April 15, 2009, at 9:15 a.m." in Washington County Court of Common Pleas. The Application and its attachments total 245 pages.

**Factual and Procedural Background**

"This case proves the axiom that 'the wheels of justice grind slowly." *Gary v. Braddock Cemetery*, 517 F.3d 195, 198 (3d Cir. 2008). The underlying facts,[1] which are straightforward and largely undisputed, have occupied state courts since September 30, 1994, when Lori Slider, as parent and natural guardian of Ryan E. Taylor, a minor, filed a personal injury lawsuit against The Washington Hospital (the "Hospital"); Paul Wodlinger, M.D.; Edward Foley, M.D., individually and trading and doing business as Pediatric Associates of Washington (the "Doctors").[2] Plaintiff alleged that the Hospital and the Doctors were

---

[1] The facts are drawn principally from the Opinion of the Court of Common Pleas of Washington County, filed August 30, 2007, in which the trial court permitted National Union Fire Insurance Company to intervene, granted Plaintiff's motion to have a *supersedeas* bond posted to satisfy an outstanding judgment; and denied the Hospital's Motion to Deem Judgment Satisfied and the August 4, 2008, opinion of the Superior Court of Pennsylvania, which affirmed the opinion of the trial court. The parties and their counsel are more than familiar with the facts, but the Court revisits these facts in order to provide context for its decision to abstain.

[2] Children's Hospital of Pittsburgh ("Children's") was also named as a defendant,
(continued...)

3

negligent in their care of her while pregnant and in labor, and in their care of her newborn son, resulting in injuries to her minor child.

The case was tried before a jury and, on May 3, 2000, the jury returned a verdict in favor of Lori Slider, as parent and natural guardian of Ryan E. Taylor, and against the Hospital and the Doctors. A judgment of $19,759,896.87 was entered in favor of Plaintiff. The jury determined that the Hospital was responsible for 70% of the liability and the Doctors were each responsible for 15% of the liability (a total of 30%).[3] Following post-trial motions, the trial court entered a judgment jointly and severally against the three defendants in the sum of $19,759,896.87, which was later amended to reflect delay damages in an amended amount of $22,994,535.64.

The Hospital and the Doctors filed separate and timely appeals of the judgment.[4] Following entry of judgment, Judge David L. Gilmore, now deceased, ordered that the defendants post a *supersedeas* bond, jointly and severally, in the sum of $19,637,860.33, pending resolution of the appeals filed by the defendants. On March 12, 2001, the Doctors filed

---

[2] (...continued)
but the jury found Children's not negligent.

[3] After an appeal on the issue of delay damages, the trial court added the amount of delay damages to the original judgment, and entered a judgment in favor of Lori Slider, as parent and natural guardian of Ryan E. Taylor, in the amount of $22.9 million.

[4] In early 2002, the Pennsylvania Superior Court affirmed the judgment as to the two Doctors. In March 2003, the Pennsylvania Supreme Court entered an order administratively dismissing the appeal, after which Ms. Slider sought to execute on the ISCOP bond.

a *supersedeas* appeal bond in the amount of $400,000,[5] and the Hospital filed a *supersedeas* appeal bond in the amount of $19.3 million.[6]

While the appeals from the judgment were pending, Lori Slider entered into a settlement agreement with the Hospital and its excess insurance carrier, National Union, for $12 million. The settlement was reduced to a written agreement on November 29, 2001. Concurrently with executing the Settlement Agreement, Ms. Slider and National Union also executed a second document, Assignment of Rights, reciting as additional consideration an assignment of all of National Union's indemnification rights back to Ms. Slider.

On August 29, 2001, before the written settlement agreement was finalized, the Doctors filed an action against National Union for breach of contract, bad faith, and a declaratory judgment. *See Foley v. National Union Fire Insurance Co.*, No. 2001-4687, Washington County Court of Common Pleas. The Doctors alleged that National Union provided a policy of excess insurance coverage to Washington Hospital and its agents, servants, and employees. The Doctors contended that, as ostensible agents of the Hospital, they were insured under the terms of the National Union policy. The Doctors requested damages and declaratory relief, including a prohibition upon National Union from withdrawing or cancelling any supersedeas bond during the pendency of the appeals in the case. On October 1, 2001, the trial court enjoined the withdrawal of the appeal bond, pending resolution of the underlying appeals. National Union appealed from that Order.

---

[5] The surety on this appeal bond was Travelers Casualty and Surety Company of America.

[6] The surety on this appeal bond was the Insurance Company of the State of Pennsylvania, the Plaintiff in the instant interpleader action.

On December 12, 2001, Lori Slider filed a Petition for Approval of Partial Payment of Judgment and Distribution. In that Petition, Ms. Slider requested court approval of the Settlement Agreement and attorneys' fees. The trial court granted Plaintiff's Petition and approved the Settlement Agreement.

On January 4, 2002, the Superior Court of Pennsylvania affirmed the judgment of the trial court. The Supreme Court of Pennsylvania granted allowance of appeal, but the appeals were later "administratively closed." *See Slider v. The Washington Hospital*, 819 A.2d 544 (Pa. 2003).

After the appeals were decided, the parties in the *Slider* litigation filed a number of motions, *to wit:* Ms. Slider sought to execute on the appeal bonds and the Hospital and Doctors sought to delay execution.

On December 16, 2003, the trial court issued an Order granting the Motion of the Hospital and the Doctors to stay execution pending the disposition of the appeal in the *Foley* case by the Superior Court.[7] Ms. Slider filed an appeal of the December 16, 2003 Order, and the Hospital filed a cross-appeal. On March 29, 2005, the Superior court remanded the case to the trial court for a determination of whether the Doctors were covered by the $19.3 million bond.

On April 5, 2005, the Doctors filed a Motion to release the $19.3 million *supersedeas* bond and a Motion to have the Judgment deemed satisfied. The Doctors claimed

---

[7] In the *Foley* case, the Superior Court remanded, indicating that an injunction bond would be required. *Foley,* 817 A.2d 1188 (Pa. Super. Ct. 2002) (unpublished memorandum). The trial court ordered an injunction bond of $50,000, which the Doctors posted. National Union appealed, but the Superior Court found no merit to the appeal. *Foley,* 855 A.2d 140 (Pa. Super. Ct. 2004) (unpublished memorandum).

that the posting of the bond by the Hospital provided coverage to them and that the Doctors, therefore, had the benefit of its coverage for the full required posting amount, *to wit*: $19.7 million.

On July 28, 2006, National Union filed a Motion requesting argument on various pending motions, including a "Motion to Discharge and Satisfaction of *Supersedeas* Appeal Bond" filed in September 2002 by the Hospital and the Motions filed by the Doctors "to Have Judgment Deemed Satisfied and Motion to Release Bond to Plaintiffs."

On September 11, 2006, National Union and American International Group, Inc., filed a Petition for leave to intervene *nunc pro tunc* in the *Slider* litigation to protect their position with regard to the $19.3 million bond.

After hearing oral argument and after a review of the entire record, on August 30, 2007, the trial court filed an Opinion in which it found that the $19.3 million bond was posted to cover all Defendants (i.e., the Hospital as well as the two Doctors) per the language of the bond. The trial court further stated that "[i]f any ambiguity exists relative to the bond, it is to be construed against the party writing same." Opinion at 2.

The trial court also found that "Paragraph 8 of the Settlement Agreement provided for a $500,000 payment to settle all claims of Lori Slider, in her own right, releasing not only the Hospital and it's (sic) insurer, but also, the other Defendants in the underlying litigation." *Id.* at 2-3. The trial court determined that the "remaining provisions of the written document is silent as to the effect on the tortfeasors other than Washington Hospital. Therefore, it is presumed to be a *pro tanto* release." Opinion at 3. The Court found that the *supersedeas* bond was meant to cover and protect the Doctors; and, accordingly, granted Plaintiffs' motion to

have the *supersedeas* bond satisfy the outstanding judgment and denied the motion of the Hospital to deem the judgment satisfied.

On August 4, 2008, the Superior Court of Pennsylvania affirmed the August 30, 2007 decision of the trial court. In that decision, the Superior Court specifically found as follows:

> The record shows that on February 28, 2001, the trial court ordered that the amount of the security required of the Hospital and the Doctors, 'jointly and severally, to operate as a *supersedeas* during the period of appeal shall be $19,637,860.33. Order of Judge David L. Gilmore, filed 3/1/01. Two supersedeas bonds were subsequently filed, one for $400,000 and one for $19.3 million. These circumstances demonstrate that the bonds were to be joint, to address the trial court's Order requiring 'joint and several' security of $19.6 million. <u>Thus, the circumstances surrounding the making of the $19.3 million bond indicate that it was intended to cover both Washington Hospital and the Doctors. We reject the Hospital's claim to the contrary.</u>

Superior Court decision of August 4, 2008, at 10 (emphasis added).

The Superior Court further found that although the Petition for Partial Payment of Judgment and Distribution stated that the appeal bond "shall be withdrawn," the actual Settlement Agreement contained no reference to the withdrawal of the bond as a term or condition of the Settlement Agreement and that the Settlement Agreement represented "the full and complete understanding of the parties." *Id.* at 11.

Moreover, the Superior Court also found that the language of the Settlement Agreement demonstrated that the parties to the agreement intended it to be a *pro tanto* release of the Hospital's liability. Finally, the Superior Court concluded that Plaintiff could execute on the National Union supersedeas bond to satisfy Plaintiff's judgment against the Doctors and that the trial court did not err in failing to conduct an evidentiary hearing because "the

circumstances surrounding the issuance of the *supersedeas* bonds were apparent from the record." Decision of the Superior Court, at 17.

On March 31, 2009, the Supreme Court of Pennsylvania denied the Petition for Allowance of Appeal. This lawsuit then followed.

ICSOP initiated the instant interpleader action to "resolve [] competing claims" over the *Supersedeas* Bond.[8] ICSOP asserts that "[g]iven the adverse claims of the parties to this action, ICSOP will be exposed to multiple litigation and potential liability with respect to its duties, if any, under the Bond absent Court resolution of the Defendants' competing claims." Complaint at ¶ 2. Defendants Lori Slider and Geoffrey Fieger respond that there is no controversy as the "indemnification issue has already been conclusively resolved by final and final order of the Pennsylvania Supreme Court" and that "ICSOP [and National Union] simply want a new forum in which to overturn the final orders of the state court." Mot. to Dismiss ¶ 8.

Defendants Lori Slider and Geoffrey Fieger also argue that "ICSOP's instant complaint is barred by the well-established principles of the *Rooker-Feldman* doctrine which prohibits re-litigation in federal court of those claims conclusively resolved by final order of the state court" and "by the well-established doctrine of *Younger* abstention which counsels the federal court to abstain from intervening and/or interfering with the execution of a state court judgment conclusively resolved by final order of the state court." *Id*. at ¶¶ 11, 12.

---

[8] By letter dated April 3, 2009, National Union has instructed ICSOP not to disburse the proceeds under the Bond because, in the view of National Union, any release of the Funds would contravene the terms of the Settlement Agreement. "National Union has informed ICSOP that, under these circumstances, payment of the Funds would be deemed by it to constitute an act of interference by ICSOP with National Union's rights under the Settlement Agreement." Complaint, at ¶ 36.

9

**Discussion**

"It is, of course, the general rule that the mere pendency of a similar action in a state court does not require, nor even permit, a federal court to refuse to hear or to stay an action that is properly within its jurisdiction, and that both state and federal actions should go forward until one of them results in a judgment that may be asserted as res judicata in the other." *NY Life Distributors, Inc., v. Adherence Group, Inc.*, 72 F.3d 371, 376 (3d Cir. 1995). Therefore, as a general rule, "the federal district courts have a virtually unflagging obligation . . . to exercise jurisdiction given them . . ." *IFC Interconsult v. Safeguard International Partners*, LLC, 438 F.3d 298, 305 (3d Cir. 2006) (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Thus, "abstention from the exercise of federal jurisdiction is the exception, not the rule . . .; [i]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a state court could entertain it." *Colorado River*, 424 U.S. at 813-14. Nonetheless, several doctrines of abstention have evolved which allow the district courts to decline to hear cases over which they have jurisdiction. *NYLife Distributors, Inc. v. Adherence Group, Inc*., 72 F.3d 371 (3d Cir. 1995).

The United States Supreme Court has recognized certain circumstances under which a federal court's abstention from the exercise of its jurisdiction may be appropriate in, among others, the following cases: *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), *Younger v. Harris,* 401 U.S. 37 (1971) and *Colorado River Water Conservation District v. United States, supra*. *Pullman* abstention is proper when a state court determination of a question of state law might moot or change a

federal constitutional issue. *Burford* abstention applies when questions of state law in which the state has expressed a desire to establish a coherent policy on a matter of substantial public concern are raised. Abstention under *Younger* is appropriate where, in the absence of bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked to restrain certain state criminal proceedings. *See New York Life,* 72 F.3d at 376 n.8. "Over the years, an additional ground for dismissing or staying a federal action in favor of state court proceedings has developed; it is aimed at avoiding duplicative litigation and is premised on considerations which concern the efficient administration of judicial resources and the comprehensive disposition of cases." *Id.* (*citing Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)).

In *New York Life,* the United States Court of Appeals for the Third Circuit specifically addressed which standard should apply to the decision of a district court to dismiss an interpleader action commenced under Section 1335 in favor of parallel state court proceedings.[9] As neither *Pullman, Burford,* nor *Younger* appeared applicable, the appellate court looked instead to *Colorado River* and to *Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995) and *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942), where the United States Supreme Court held that district courts have discretion to decline to hear lawsuits brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, in favor of pending state actions for reasons of judicial economy, even where they have jurisdiction. *Wilton,* 515 U.S. at 287-88. In so doing,

---

[9] The appellate court in *NY Life* also observed that "district courts have traditionally assumed that they possess broad equitable discretion to decline jurisdiction over a statutory interpleader lawsuit where in their view there is a pending state proceeding that obviates the need for federal action." *NY Life,* 72 F.3d at 379.

the *New York Life* court read *Wilton* and *Brillhart* "to instruct that the exceptional circumstances test is not universal and will yield in cases where the statute which grants a district court the authority to decide a matter justifies a standard vesting district courts with greater distinction than that permitted under the exceptional circumstances of *Colorado River* . . ." *New York Life,* 72 F.3d at 379.

As the language and legislative histories of §§ 1335 and 2361[10] were inconclusive as to the intent of Congress, the appellate court looked further to the underlying purpose of the interpleader statute. Believing that, as was the case with the Declaratory Judgment Act, "the decision to entertain a[n] [interpleader] action in view of a pending state action is committed to the district courts in the first instances because 'facts bearing on the usefulness of the remedy and the fitness of the case for resolution are particularly within their grasp,' " our appellate court ruled that "the discretionary standard enunciated in *Brillhart* governs a district court's decision to dismiss an action commenced under the interpleader statute during the pendency of parallel state court proceedings." 72 F.3d at 382 (*quoting Wilton*, 115 S. Ct. at 2144). In applying *Brillhart*, the appellate court instructed in pertinent part, as follows:

> [T]he district court should determine, as a threshold matter, whether the state court action is indeed "parallel;" that is, whether it encompasses the competing claims to the Mainstay Mutual Fund monies that are raised here. Since the very basis for deference is the avoidance of needless duplicative litigation, the absence of a parallel state proceeding, as we have defined it in this context, would counsel against, if not proscribe, dismissal. Thereafter, in considering TAG's motion, the district court should bear in mind that neither the mere pendency of a parallel state court action nor the mere presence of state law issues in this case would support

---

[10] Title 28, United States Code, section 2361 provides for nationwide service on all claimants in statutory interpleader actions and allows a district court in a section 1335 interpleader case to enjoin any state or federal proceedings affecting the stake.

12

> dismissal; the court must remain cognizant of the purpose of the interpleader statute, ultimately determining where the competing claims that expose the stakeholder to multiple lawsuits and liability "can better be settled...." (Citation omitted). In this regard, the court should evaluate which forum will protect the stakeholder more effectively while providing the claimants with the more efficient, convenient, and expeditious vehicle to settle their dispute to the fund. We would also expect the district court to evaluate the conduct of the parties in litigating both the federal and state actions to ensure that procedural fencing, forum shopping or gamesmanship is not rewarded. We do not intend the considerations we have enunciated to be comprehensive, and leave it to the district court to consider any other facts it finds relevant.
>
> Finally, as the Court noted in Wilton, "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the controversy. (Citation omitted). Accordingly, the district court should also, consider whether a stay of this action, rather than a dismissal, is appropriate, in the event it decides that the parties are to resolve the issues raised in this action in the state court.

*New York Life,* 72 F.3d at 382-83.

In applying the foregoing factors, the Court must first look to whether or not this matter is parallel to a pending state proceeding that obviates the need for federal action. A state action is "parallel" to a federal suit if both suits involve substantially the same parties and present substantially the same issues. *See Caminiti v. Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) and *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991).

Here, although ICSOP was not a party in the lawsuit commenced in the Court of Common Pleas of Washington County, by its own admission, both it and National Union, are indirect wholly owned subsidiaries of American International Group. In fact, ICSOP and National Union have identical addresses and identical telephone numbers in New York City.

See Mot. to Dismiss, Exhibit A. Furthermore, the claims in both this Court and the state court involve the same *supersedeas* bond. Thus, the Court finds and rules that the state court action is "parallel" to the pending interpleader action filed in this Court.

Next, the Court must consider which forum will protect the stakeholder more effectively while providing the claimants with the more efficient, convenient, and expeditious vehicle to settle their dispute to the bond. This Court finds no reason why the interests of ICSOP could not be effectively protected in the Pennsylvania state court action. The Pennsylvania state court action was initiated first and the Pennsylvania courts are intimately familiar with the issues surrounding the issuance of the *supersedeas* bond and the Settlement Agreement executed between Lori Slider and the Hospital. In fact, unequivocally, the Court of Common Pleas, the Superior Court, and the Supreme Court of Pennsylvania, by denying the Petition for Allowance of Appeal, have each found that the *supersedeas* bond at issue in this interpleader action covered all three defendants.

Finally, the Court observes that ICSOP has articulated no reason why this Court is in any better position to protect its interests than is the Pennsylvania state court. All of these factors suggest that the interests of judicial economy are best served by exercising this Court's discretion to abstain from acting further in this matter.

## Conclusion

For all these reasons, the Court finds that the application of the *Colorado River* abstention doctrine is appropriate in this matter and the Court, exercising its discretion, will abstain in this matter.

An appropriate Order follows.

                                                 McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 02: 09-cv-0401 |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; GEOFFREY N. FIEGER; LORI SLIDER, in her own right and as parent and natural guardian of RYAN E. TAYLOR, a minor; RYAN E. TAYLOR, individually; and BRADLEY BASSI, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, this 14th day of April, 2009, in accordance with the foregoing Memorandum Opinion, and upon consideration of the Complaint and Motion for Leave to Deposit Bond Into The Registry of the Court and for a Preliminary Injunction and Temporary Restraining Order, and the Motion to Dismiss Complaint for Interpleader and the Response and Memorandum in opposition,

It is hereby **ORDERED** that the request of abstention of Defendants Lori Slider, in her own right and as parent and natural guardian of Ryan E. Taylor, a minor; and Geoffrey Fieger is **GRANTED.**

The Clerk of Court is directed to mark this case closed.

BY THE COURT:<br>
s/Terrence F. McVerry<br>
United States District Court Judge

cc: Michelle K. Carson, Esquire
Stradley Ronon Stevens & Young LLP
Email: mcarson@stradley.com

Geoffrey N. Fieger, Esquire
Fieger, Fieger, Kenney & Johnson
Email: g.fieger@fiegerlaw.com